**VETTE COMPANY and Kansas City Boneless Beef, Inc., Appellants,**

v.

**The AETNA CASUALTY & SURETY COMPANY, Appellee.**

**No. 79–1200.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 6, 1979.

Decided Jan. 10, 1980.

Michael J. Drape, Kansas City, Mo. (argued), and Stanley M. Burnstein, Kansas City, Mo., on brief, for appellants.

R. Frederick Walters, Linde, Thomson, Fairchild, Langworthy, & Kohn, Kansas City Mo., for appellee.

Before ROSS and STEPHENSON, Circuit Judges, and McMANUS *, District Judge.

McMANUS, District Judge.

In this removed action, corporate plaintiffs Vette Company (Vette) and Kansas City Boneless Beef, Inc. (Boneless) appeal from summary judgment below denying Vette recovery for lack of an insurable interest under a fire insurance policy issued to it by defendant, The Aetna Casualty & Surety Company (Aetna), covering the contents of a building in Raymore, Missouri destroyed by fire March 2, 1975. We reverse and remand.

■ At the outset, we recognize that in reviewing a decision of a district court to grant a summary judgment, we apply the same standard as the trial court. *Butler v. MFA Life Insurance Co.*, 591 F.2d 448, 451 (8th Cir. 1979). Summary judgment should

*The Honorable Edward J. McManus, Chief Judge, United States District Court for the

not be entered unless the pleadings, stipulations, affidavits and admissions in the case show that there exists no genuine issue as to any material fact. FRCP 56(c); *see Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). It is an extreme and treacherous remedy, not to be entered unless the movant has established its right to a judgment with such clarity as to leave no room for controversy and unless the other party is not entitled to recover under any discernible circumstances. *Equal Employment Opportunity Comm. v. Liberty Loan Corp.*, 584 F.2d 853, 857 (8th Cir. 1978); 10 Wright & Miller, Federal Practice and Procedure § 2725, pp. 502–03.

■ In passing upon a motion for summary judgment the court is required to view the facts in the light most favorable to the party opposing the motion and to give that party the benefit of all reasonable inferences to be drawn from the underlying facts disclosed in pleadings and affidavits filed in the case. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Equal Employment Opportunity Comm. v. Liberty Loan Corp., supra*; also for recent discussion of court's negative discretion in ruling on motion for summary judgment, *see McLain v. Meier*, 612 F.2d 349 (8th Cir., 1979).

The entire record, including a lengthy stipulation, discloses the following undisputed facts. The corporate plaintiffs have interlocking ownership. All the common stock of Vette was owned by Dwight "Jack" Rice (Rice) and his wife. Rice was president and chief executive officer of Vette. The common stock of Boneless was owned 50% by Rice and 50% by Harold Lambrecht (Lambrecht). Rice and Lambrecht were president and vice president-manager respectively of Boneless. Vette operated a chili plant at Lee's Summit, Mo., and until the fall of 1973, Boneless operated a meat boning plant in the Missouri Bottoms at Guinotte.

Northern District of Iowa, sitting by designation.

Prior to 1973, Vette purchased a building at 234 N. Madison in Raymore, Mo., and it was decided that Boneless would expand its operation and move into the newly purchased building. In October, 1973, after extensive remodeling, Boneless occupied the Raymore plant. Boneless purchased all the equipment needed to make the building usable as a boning plant.

On August 31, 1974, Aetna issued fire policy # 30 FP 801960 (FP60) with $200,000 coverage on the building and $100,000 on the contents with Boneless the named insured. On December 6, 1974, at Lambrecht's request, Aetna reduced the building coverage to $100,000 retroactive to August 31, 1974. When Rice learned of the reduction, he requested and received policy # 30 FP 26627 (FP27) from Aetna with $200,000 coverage on the building and $100,000 on the contents with Vette the named insured, effective January 21, 1975.[1]

After the fire Lambrecht prepared an inventory of the contents including all equipment and meat in the plant. On April 22 at a meeting attended by Aetna's claim representative, Rice and Lambrecht, it was agreed that Lambrecht's inventory belonged to Boneless and the damage figures for the contents were reasonable. Thereafter, upon receiving $154,779.92, Boneless executed a release to Aetna of all its claims under policy FP60. Additionally, at the meeting, after receiving a total of $176,-884.07 from Aetna, Vette agreed that the building coverage of its policy had been fully satisfied. However, Aetna refused to pay Vette on the contents portion of its policy on the ground of no insurable interest. It is with respect to this dispute concerning whether Vette had an insurable interest in the contents of the building that we find the record insufficient to conclude that no genuine issue of material fact exists.

The characterization of "insurable interest" set forth in 44 C.J.S. Insurance § 175 has been adopted in Missouri, the applicable law in this case. That section reads:

In general a person has an insurable interest in the subject matter insured where he has such a relation or connection with or concern in, such subject matter that he will derive pecuniary benefit or advantage from its preservation, or will suffer pecuniary loss or damage from its destruction, termination, or injury by the happening of the event insured against.

And, as was said in *Prewitt v. Continental Ins. Co.*, 538 S.W.2d 902, 905 (Mo.App.1976):

. . . where an individual has a direct pecuniary interest in the preservation of the property, an insurable interest in the property exists for that individual.

Vette bases its claimed insurable interest in the contents solely on a cancelled check dated February 1, 1974 from Vette to Boneless for $162,227.03. The 14-page stipulation of facts makes no reference to it. Since there has been no agreement on what the check was written for, we believe this issue is a proper subject of factual inquiry on remand. Whether the check was in fact paid for equipment in and contents of the Raymore plant is a disputed issue that must be resolved by the trier of fact. For, if it can be found that Vette had a direct pecuniary interest in any of the destroyed contents, it had an insurable interest in them.

Moreover, other relevant evidence of record must also be considered in resolving this issue. For example, while the check carried the memorandum "For equipment, labor and material that was paid by Kansas City Boneless Beef for Raymore plant,"[2] Vette's tax returns show that it never took a depreciation deduction nor an investment credit on any equipment in the building through 1975. The only equipment on which Vette claimed a depreciation deduction was at the

---

1. FP27, as issued, incorrectly listed the rates, credits and co-insurance. After this was brought to Aetna's attention, a new policy was issued on April 7, 1975, with corrections. The new policy, # 30 FP 24791 (FP91), listed Vette as the named insured and provided the same coverage. FP27 was cancelled on April 9, 1975 and Vette's loss was adjusted under FP91.

2. Record, p. 418.

Lee's Summit chili plant. Although concededly it was not obligated to take a deduction to which it may have been entitled, its failure to do so raises factual inferences which, when properly controverted, should not be decided by way of summary judgment.

Additionally, during the fall of 1973, Boneless borrowed money from Laurel Bank (Laurel) in Raytown, Mo., which took a security interest in the inventory and accounts receivable of Boneless. After the fire, Laurel required additional security for the loan. Lambrecht turned over the equipment inventory list which had been prepared immediately after the fire. At that time, Lambrecht and Rice informed Laurel that Boneless owned the equipment set forth on the list and Laurel was granted a security interest in all of the inventory.

Curiously, Vette's own accountant, Joseph Wood, testified in his deposition that in Vette's fiscal year ending February 28, 1974, all the equipment and land at 234 N. Madison had been taken from the books of Vette because the title to the building and equipment had been transferred to Mr. and Mrs. Rice and Mr. and Mrs. Lambrecht as tenants in common. That testimony is supported by a letter from Vette's attorney, Stan Burnstein, to Wallace Gautreaux, accountant for Boneless, which informed him:

> . . . Jack and Harold received title to the building and equipment (including equipment subject to investment credit) from Vette Company on January 31, 1974.[3]

There is nothing in the record to show that title to the equipment (or the building for that matter) was transferred back to Vette between then and the date of the fire.

Thus, although Aetna, the movant, provided ample evidence to infer that Vette had no direct pecuniary interest, and impliedly no insurable interest, in the contents of the burned building, Vette has also provided sufficient evidence—the check with accompanying memorandum—to put in dispute this material and factual issue. As the party opposing the motion for summary judgment, Vette was entitled to the benefit of all reasonable inferences and to a review of the facts in the light most favorable to it. That we have done, and that the trial court should have done.

Accordingly, we reverse and remand for further proceedings not inconsistent herewith.

---

**3.** Defendant's Exhibit 27.