**Elizabeth A. VACURA and Raymond Vacura, Appellants,**

v.

**Carol L. PLOTT, Appellee.**

**No. 81–1179.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 14, 1981.

Decided Dec. 16, 1981.

4. The Honorable Harry H. MacLaughlin, United States District Judge, District of Minnesota.

Robert L. Sikma (argued), Lorna A. Gilbert of Sikma & Gilbert, Sioux City, Iowa, for appellants.

Francis Fitzgibbons (argued), Harold W. White of Fitzgibbons Brothers, Estherville, Iowa, for appellee.

Before STEPHENSON and McMILLIAN, Circuit Judges, and LARSON,* Senior District Judge.

STEPHENSON, Circuit Judge.

Appellant Elizabeth Vacura[1] brought this medical malpractice action under our diversity jurisdiction against appellee physician, Dr. Carol L. Plott. The district court[2] granted Dr. Plott's motion for summary judgment on the grounds that the statute of limitations barred the suit. Vacura appeals. We reverse and remand for trial.

FACTS[3]

On February 3, 1976, Dr. Plott, a surgeon, performed a thyroidectomy on appellant Vacura with the assistance of Dr. K. L. Clayton, osteopathic physician and surgeon, at the Dickinson County Memorial Hospital, Spirit Lake, Iowa.[4] Upon awakening from surgery, Vacura was unable to speak in a normal voice. Dr. Plott told her on February 6 that it might take a little time to get her voice back. Vacura, in her deposition, indicated that she was skeptical because of her prior experience as a nurse's aide in a hospital.

On February 9, 1976, a few days after surgery, Dr. Clayton removed the stitches from Vacura's throat. Vacura still complained of soreness in her throat and a loss of voice but Dr. Clayton remarked that Vacura's voice problems "would be improving."

Vacura continued to experience problems with her voice. These problems were described as "hoarseness," "laryngitis," a "high-pitched squeaky voice," or "half a whisper, half squeak." On February 23, 1976, she returned to Dr. Clayton for an examination. She complained that she had a sore throat and hoarseness. Upon Vacura's question whether her voice would return to its pre-operation character, Dr. Clayton told her, "give it time."

On March 20, 1976, Vacura went to Dr. Plott. Dr. Plott observed "some hoarseness" in Vacura's voice and that it was "high pitched." Dr. Plott advised Vacura to "try to speak in a normal voice" and that she should give her voice "some time" to recover.

Vacura's voice problems continued. Upon re-examination on March 31, 1976, Dr. Plott arranged to have Vacura see Dr. J. E. Dvorak, an eye, ear, nose, and throat specialist in Spirit Lake. Dr. Dvorak examined Vacura on April 13, 1976, and he advised Dr. Plott and Vacura that she had paralysis of her left vocal cord. He stated that such a condition "frequently happen[ed] in thyroid surgery" and that "[h]er voice will improve when the right cord will go over the midline and compensate for the loss of motion in the left cord." Dr. Dvorak advised Vacura her voice would probably improve and to give her voice approximately six months for it to do so.

---

* The Honorable Earl R. Larson, United States Senior District Judge for the District of Minnesota, sitting by designation.

1. Appellant Raymond Vacura, husband, sought damages for loss of consortium. All references herein to appellant or Vacura refer to Elizabeth Vacura.

2. The Honorable Donald E. O'Brien, United States District Judge for the Northern and Southern Districts of Iowa.

3. The facts are based on pleadings, admissions, answers to interrogatories, exhibits and depositions of the parties and witnesses.

4. Elizabeth Vacura is a resident of Jackson, Minnesota. Drs. K. C. Clayton and C. L. Plott are residents of Spirit Lake, Iowa.

Subsequently, Vacura decided to seek further medical attention at the Mayo Clinic in Rochester, Minnesota. At her request, Dr. Clayton made an appointment for Vacura with Dr. H. B. Neel for May 12, 1976. Dr. Neel, a specialist in otorhinolaryngology, examined Vacura and told her he believed the nerve which activates the left vocal cord had been damaged during her thyroid surgery. He told her the damage was a "recognized complication" of thyroid surgery and that her voice "might very well improve and it almost always does." Neel advised Vacura to return if she did not notice improvement over the next six to nine months. Dr. Neel further testified that "with one vocal cord paralyzed there is no reason at all why she [Vacura] shouldn't speak normally again." He also stated that at no time did he ever advise plaintiff that either Dr. Plott or Dr. Clayton had mismanaged her medical treatment in any way.

Vacura called Dr. Clayton on May 14, 1976, and told him that Dr. Neel had said that her left nerve in her voice box had been severed during surgery.

On approximately May 1, 1976, the Spirit Lake Medical Center mailed Vacura a bill for her surgery. She returned the bill on July 7, 1976, stating that she would "let the bill ride for a while" depending upon what Dr. Clayton and Dr. Plott "are going to do about the nerve they cut to [her] voice box." She remarked that she was told at the Mayo Clinic that the layrngeal nerve controlling the left side of her voice box had been severed during surgery. She closed, "Until something is done to help get my voice back this bill is going to ride. Dr. Plott should be concerned for [sic] what he did. I'm sure Dr. Clayton told him what happened."

On July 20, 1976, Vacura sent a letter to Dr. Neel, inquiring whether a neurosurgeon could do anything to improve her damaged voice.

Vacura stated in her deposition that she continued to experience problems with her voice but she did not return to the Mayo Clinic until May 12, 1978. At that time she said she had been suffering from choking spells and her voice had improved little. Dr. Thomas MacDonald examined her and advised her that, in light of the fact that her voice had not improved over the two years since her surgery, her condition was permanent.

Vacura filed suit on August 22, 1978, against Dr. Plott alleging that he had negligently performed the thyroidectomy on February 3, 1976, and had thereby caused the damage to Vacura's voice. Following the filing of various motions and cross-motions for summary judgment, Judge O'Brien granted defendant's motion for summary judgment based on Iowa Code § 614.1(9). This provision places, on malpractice actions, a statute of limitations of two years "after the date on which the claimant knew, or through the use of reasonable diligence should have known * * * the injury or death for which damages are sought in the action." *Id.* Judge O'Brien found, as a matter of law, that plaintiffs knew of Mrs. Vacura's injury, whether interpreted as physical, or her right to sue, at least by July 20, 1976. This was the date when Vacura wrote Dr. Neel inquiring whether a neurosurgeon could help her damaged voice.

ISSUES

The dispositive issue presented on appeal is whether the application of the statute of limitations involved resolution of fact issues which should have been left to the jury and thus was not properly decided by the court on a motion for summary judgment.

DISCUSSION

Appellants argue that the district court erred in granting Dr. Plott's motion for summary judgment because the above issue was a factual issue inappropriate for summary judgment. That issue was whether the plaintiffs knew or, through the use of reasonable diligence, should have known of the existence of their cause of action within the relevant statutory period set out in Iowa Code § 614.1(9). Appellants argue that summary judgment is a harsh remedy and should be granted only in cases where "movant has established its right to a judg-

ment with such clarity as to leave no room for controversy." *Vette Co. v. Aetna Casualty & Surety Co.*, 612 F.2d 1076, 1077 (8th Cir. 1980). Appellants conclude that when they discovered or should have discovered the existence of their cause of action is a fact question most properly left for the jury, especially in light of the assurances of doctors that Mrs. Vacura's infirmity would be temporary.

Dr. Plott responds that there is no dispute of material fact establishing that Vacura knew of the injury on or before May 12, 1976. Dr. Plott claims that Vacuras' testimony in their depositions and the testimony of the physicians they consulted unquestionably shows that on or before May 12, 1976, (and certainly on or before July 20, 1976) they knew or should have known of the acts of negligence claimed in this lawsuit.

On a motion for summary judgment, "the inferences to be drawn from the underlying facts contained in [the moving party's] materials must be viewed in the light most favorable to the party opposing the motion (citation omitted)." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970); *see Vette Co. v. Aetna Casualty & Surety Co., supra*, 612 F.2d at 1077. Furthermore, summary judgment is a harsh remedy and should be used only in special cases where there is no dispute of material fact. *Vette Co. v. Aetna Casualty & Surety Co., supra*, 612 F.2d at 1077; Fed.R.Civ.P. 56(c).

In *Baines v. Blenderman*, 223 N.W.2d 199 (Iowa 1974), the Iowa Supreme Court held that in a medical malpractice action against a surgeon and a hospital for the loss of sight in the plaintiff's eye during back surgery, summary judgment in favor of defendants based on the running of the statute of limitations was improper. The court held that there was genuine issue of material fact whether plaintiff knew or had reason to know the eye injury was caused by defendants' negligence and, therefore, whether the statute of limitations had run.[5]

Following the *Baines* decision, the Iowa legislature changed the statute of limitations for malpractice actions from a general two-year statute applying to tortious and contractual injuries to the person[6] to a specific two-year statute applying to medical malpractice.[7]

5. As in the present case, the plaintiff in *Baines v. Blenderman*, 223 N.W.2d 199 (Iowa 1974), relied on the assurances of his treating physician in initially assuming his condition was temporary. *Id.* at 202–03. The court held:

> In the present case plaintiff knew on March 30, 1970, that he could not see with his right eye. He also knew the condition must have been caused by something which occurred during surgery. He testified he asked his treating physician, Dr. Brown, what was wrong and was assured the condition was just a temporary postoperative side effect. Under his version of the events plaintiff had no reasonable means of knowing the doctor's advice was not correct.

*Id.* at 202. The court also stated:

> Defendants argue plaintiff cannot rely on assurances from Dr. Brown in seeking to avoid their statute of limitations defenses. However, the source of the assurances is not determinative. The issue is what plaintiff actually knew or in the exercise of reasonable diligence should have known. The fact he received the alleged assurances from Dr. Brown and not defendants, although a factor to be considered on the issue of reasonable diligence, does not necessarily mean plaintiff

should have known sooner than he did of defendants' alleged malpractice.

> \*   \*   \*   \*   \*   \*

> We hold there is a genuine issue of material fact as to whether plaintiff discovered or, in the exercise of reasonable care, should have discovered more than two years before this action was brought that his injury was caused by negligence of these defendants. The trier of fact could find he was excusably unaware of his cause of action until July 15, 1970, the date he contends he first learned the cause and true nature of his injury.

*Id.* at 203.

6. The applicable statute provided:

> Actions may be brought within the times herein limited, respectively, after their causes accrue, and not afterwards, except when otherwise specially declared:
> 1. \* \* \*
> 2. \* \* \* Those founded on injuries to the person \* \* \*, whether based on contract or tort, \* \* \* within two years.

Iowa Code § 614.1(2) (1973).

7. The statute provides:

> 9. Malpractice. Those founded on injuries to the person or wrongful death against

The Iowa Supreme Court has yet to redefine the word "injury" since the passage of Iowa Code § 614.1(9). Appellants assert that the new statute does not change the holding in *Baines v. Blenderman, supra,* 223 N.W.2d at 201–03 which states that "injury" means discovery of one's cause of action for negligence. Appellee Dr. Plott disagrees, asserting "injury" relates to the discovery of one's physical injury and not the discovery of one's cause of action. *See Flynn v. Lucas County Memorial Hospital,* 203 N.W.2d 613, 616 (Iowa 1973); *Chrischilles v. Griswold,* 260 Iowa 453, 150 N.W.2d 94, 100 (1967). We agree with appellant that *Baines* controls.

The district court found that even under Vacuras' definition of injury the statute barred recovery. Judge O'Brien ruled that as a matter of law Vacura's July 20, 1976 letter to Dr. Neel inquiring whether a neurosurgeon could do anything to help her, proved that she had "discovered all of the facts which underlie [her] present complaint and theories of liability." Since the complaint was filed August 22, 1978, the district court concluded that the statute of limitations had run.

We disagree. In spite of Vacura's letter to Dr. Neel, we are not prepared to hold that there was no dispute of material fact justifying summary judgment. Vacura contends that she was acting under the assurances of her doctors that the problems with her voice were temporary. She argues that she was reasonably diligent in relying on Dr. Neel's (Mayo Clinic) advice.

In his deposition Dr. Neel stated as follows:

I told her that recurrent laryngeal nerve injury was a recognized complication of thyroid surgery and that it could have followed the operation. I told her that since her chief complaint at that time was

a weak voice, worse at the end of the day, that with time this might very well improve, and it almost always does. If in the course of the next six to nine months she didn't notice improvement, I might have her seen by one of our speech therapists, that this would be something that we might be able to do to help that particular symptom, too.

Under the circumstances, we cannot hold as a matter of law that plaintiffs had reason to infer malpractice on the part of Dr. Plott prior to six to nine months after she had seen Dr. Neel on May 12, 1976. This would be within two years of the time she filed her complaint.

Furthermore, there is evidence indicating it was not until Dr. MacDonald told Vacura that her affliction was permanent that she was fully aware of the negligence involved in her injury.

The dispute of fact concerning whether the Vacuras discovered or, in the exercise of reasonable care, should have discovered the negligence of defendant, should have been left for the jury to decide. In view of our holding we do not need to reach the remaining arguments raised on appeal.

Reversed and remanded for further proceedings consistent with this opinion.

any physician and surgeon, osteopath, osteopathic physician and surgeon, * * * arising out of patient care, within two years after the date on which the claimant knew, or through the use of reasonable diligence should have known, or received notice in writing of the existence of, the injury or death for which damages are sought in the action, whichever of the dates occurs first, but in no event shall any action be brought more than six years after the date on which occurred the act or omission or occurrence alleged in the action to have been the cause of the injury or death unless a foreign object unintentionally left in the body caused the injury or death. Iowa Code § 614.1(9).