**Larry G. CALLAHAN, Plaintiff,**

**v.**

**Lawrence O. DAVIS, et al., Defendants.**

**No. 84–2803C(3).**

United States District Court,
E.D. Missouri.

Feb. 19, 1987.

Jeffrey S. Harrold, St. Charles, Mo., for plaintiff.

P. Pierre Dominique, Pro Hac Vice, John J. Oldenburg, Jr., Asst. Atty. Gen., Jefferson City, Mo., James E. McDaniel, St. Louis, Mo., for defendants.

### ORDER

HUNGATE, District Judge.

This matter is before the Court upon remand by the United States Court of Ap-

peals for the Eighth Circuit. *Callahan v. Rendlen*, 806 F.2d 795 (8th Cir.1986).

In some states an affidavit of prejudice directed toward the trial judge automatically disqualifies him. Mo.Rev.Stat. § 508.130 (1978). The federal courts decline that procedure. May federal judges refuse to disqualify themselves when they are adversaries in a lawsuit of the party whose case they are deciding? The appellate answer here is "Yes". This is the sort of equality under the law which gives ice to both the rich and the poor. (The rich get it in the summer and the poor in the winter.)

The court calls a case for trial. The plaintiff asks recusal of the judge because, "Judge, you are a defendant in a suit in which I am the plaintiff." The judge declines to disqualify himself and hears the case. After hearing the case and before filing his opinion, he learns again, this time from another source, that he is indeed a defendant in a suit of this plaintiff. Having "already decided the case," he proceeds to file his opinion.

When the plaintiff then brought his case to federal court, the trial judge denied the defendant-judge a summary judgment, holding there could be questions of fact or law to be determined and plaintiff should have a chance to present his case. The Eighth Circuit reversed and directed entry of summary judgment against plaintiff in favor of defendant-judge.

A partial transcript of the argument on summary judgment motions (*see* Appendix 1) shows the following:

MR. OLDENBURG [Assistant Attorney General for the State of Missouri]: An issue that came up while Judge Davis was in this action was plaintiff sought Judge Davis' recusal on the basis that he was a defendant in this action.

Now Judge Davis had not been contacted by our office. We waived service on his behalf and filed an answer on his behalf and got certified copies of the documents, but he was never actually formally contacted by our office, or informally for that matter.

The plaintiff showed up with a motion to recuse about a month—I think he filed his motion for recusal approximately a month before the hearing and then on—at the time of the hearing, again came in and said, "Judge, you're a defendant in my civil rights lawsuit; you can't sit in this cause, in my 2726."

Judge Davis had never received any papers. He had never received anything from Larry Callahan, as I understand it, indicating a summons or a service or a copy of the complaint or anything that would put him on notice, other than Larry Callahan's word. So apparently he felt that there—until he received something, he was not going to take that and delay this action any longer.

The plaintiff told the defendant-judge before trial began that they were courtroom adversaries. The Eighth Circuit Court of Appeals noted that the defendant-judge learned that he was an adverse party in a suit with the plaintiff "after he had decided the case"—but before filing his opinion. The only way the defendant-judge could have decided the case before learning of the plaintiff's suit pending against him would have been if the defendant-judge decided the case before hearing it. For a trial judge to decide a case before he has heard it is unusual, at least in rural Missouri. I am not acquainted with the mores, folkways, and trial procedures of Iowa, Arkansas, and North Dakota. In his time, a man may play many parts, but it is unfair to ask him to play them all at once.

Summary judgment is a drastic remedy. *See Vette Co. v. Aetna Cas. & Sur. Co.*, 612 F.2d 1076, 1077 (8th Cir.1980) (summary judgment "is an extreme and treacherous remedy.").

When the parties were heard on the motions for summary judgment, it developed that the Missouri Attorney General's Office has a practice of voluntarily accepting service for state judges when they are sued by inmates of the Missouri penal system. The Attorney General's Office then does not necessarily advise the judge that he has been so sued. Therefore, the state trial

judge in this case could well have doubted the truthfulness of a convicted felon's statement to him that they were adversaries in a lawsuit. However, this prisoner was telling the truth in this instance, and this graphically illustrates the inherent dangers in a policy that permits the Attorney General's Office to voluntarily accept service for a state trial judge and not notify him that he has been sued. By granting summary judgment thereby holding there can be no questions of fact or law present here by which the judge might be liable, the Eighth Circuit has placed its imprimatur of approval on this practice of the Missouri Attorney General's Office.

The Court accedes to that ruling. While not persuasive, it overwhelms. We do not know if plaintiff is a saint. We do know he is a sinner. Professor Raoul Berger is quoted as saying, "the fact that a sonofabitch claims his constitutional rights does not mean those rights do not exist."

The plaintiff's fate is of minor importance because his role on life's stage, like ours, soon ends. But what happens to the law in this case is of the gravest moment.

To run with the hare and hunt with the hound at the same time must tax the talents even of a judge.

Upon careful consideration,

IT IS HEREBY ORDERED that summary judgment be and the same is granted in favor of defendant Honorable Lawrence O. Davis; and plaintiff's claim(s) against defendant Davis are hereby dismissed and plaintiff takes nothing on his cause of action as against defendant Davis.

IT IS HEREBY FURTHER ORDERED that, the appeal having been resolved, the stay order entered July 2, 1986, be and the same is vacated.

IT IS HEREBY FURTHER ORDERED that jury trial of plaintiff's claims against remaining defendant Donald Althauser be and the same is set on the docket commencing Monday, June 8, 1987, at 9:30 a.m. *See* order of court 3 relating to trial, dated April 5, 1985.

## APPENDIX 1

### EXCERPTS OF MR. OLDENBURG'S ARGUMENT DURING MOTION HEARING

MR. OLDENBURG: An issue that came up while Judge Davis was in this action was plaintiff sought Judge Davis' recusal on the basis that he was a defendant in this action.

Now Judge Davis had not been contacted by our office. We waived service on his behalf and filed an answer on his behalf and got certified copies of the documents, but he was never actually formally contacted by our office, or informally for that matter.

The plaintiff showed up with a motion to recuse about a month—I think he filed his motion for recusal approximately a month before the hearing and then on—at the time of the hearing, again came in and said, "Judge, you're a defendant in my civil rights lawsuit; you can't sit in this cause, in my 2726."

Judge Davis had never received any papers. He had never received anything from Larry Callahan, as I understand it, indicating a summons or a service or a copy of the complaint or anything that would put him on notice, other than Larry Callahan's word. So apparently he felt that there—until he received something, he was not going to take that and delay this action any longer.

This 2726 had been pending for a long time. There's no doubt about that. Callahan had sought to get Althauser off. Went to the Supreme Court. Sought to get Puchta off. Ended up suing him in Cole County. Sought to get Althauser off again by suing him for malpractice in state civil court. Thence, I think it's a fair inference he wanted Judge Davis off and that's one of the reasons he filed this lawsuit.

The Missouri Court of Appeals, in the opinion I have filed today, makes a reference from the record of the 2726 evidentiary hearing where Callahan informed the court the only reason Judge Davis was a defendant in this action was because he was the presiding judge, not alleging any

facts, not accusing the judge of any delay or anything else. And the Court of Appeals found there was no bias or any reason for Judge Davis to recuse himself.

Judge Davis' deposition, which is on file with this Court, I believe will indicate that he did not actually have notice of this lawsuit until talking with Defendant Althauser's attorney, Pete Dominique, about a trial setting, for the past October I believe it was, when Mr. Dominique informed Judge Davis, "Well, we can't do it then, Judge, because we're going to be in Federal Court." And Judge Davis said, "For what?" And at that point Mr. Dominique informed him that he was a defendant in this action. And the judge contacted our office and we said, "Yes, you are and we're filing motions on your behalf and putting this all together."

The bottom line with respect to Judge Davis, I think the record reflects that he did not—

THE COURT: I don't think I want to talk to Mr. Dominique off the bench if that's the kind of conversations he has.

Go ahead.

MR. OLDENBURG: Just in summary, Judge Davis, I think the record will reflect, did attempt to expedite this litigation, did not—

THE COURT: Let me ask you: It is strange that he was in it and didn't know it. He was not served? Or how was it done?

MR. OLDENBURG: Typical standard procedure on any lawsuit against a state official, as I understand it, brought under 1983 by an inmate is, a copy of it is forwarded to our office by the Clerk's Office, with a standard letter saying: We assume you will waive service and we expect—

THE COURT: And you do?

MR. OLDENBURG: And we normally do.

THE COURT: Do you normally notify the fellow?

MR. OLDENBURG: Do you know how many times—

I don't mean to be flippant, but Bill Armentrout, for instance, probably gets sued ten times a week. And, no, we don't call Bill Armentrout every time he is sued. We don't normally call any of our defendants for a very good reason. It's not uncommon for an inmate to file a lawsuit, then two months later file a motion for a preliminary injunction or try to get some other type of relief, claiming that the person he sued is now retaliating against him. So we have a hearing. The defendant comes in. We put him on the stand. We say, "Mr. Defendant, when did you first learn about this lawsuit?" He says, "Two days ago, when you called me and told me we were going to court."

If he doesn't know about the lawsuit, he can't retaliate.

THE COURT: I can certainly understand, I think, Armentrout and probably the judges in Cole County. Now, when it gets out further, I wonder. But that is the practice anyway.

MR. OLDENBURG: Uh-huh.

THE COURT: I'm sorry. We've got to get to Mr. Harrold.

MR. OLDENBURG: I understand, Your Honor.

THE COURT: You've got 10 minutes and he's got at least five. Can you wrap this up?

MR. OLDENBURG: I believe I can.

Just as a practical matter, the easiest way to describe this case was, Larry Callahan filed an action in Gasconade County for 2726. His explanations are—were that when he said, "Jump," he expected the Court and his attorneys and everyone else to respond, "Yes, sir. How high would you like me to?" And when they didn't, he started filing lawsuits.

He didn't like the way Althauser was acting so he filed a Mandamus. He didn't like Puchta, so he filed Cole County. He didn't like Althauser again, he goes to the Supreme Court. He didn't like whoever, Althauser, he files a malpractice action. He didn't like Davis, he files this action.

This man is just—if you'll look at the record in this case, this man has filed so many motions and made so many attempts to shuffle people around and change the parties and change the venue and change the court, that the delay in this action was, in a large part, caused by his own motions and not by any actions on the part of any of the defendants or anyone else.

And I thank the Court.

THE COURT: All right. Thank you, Mr. Oldenburg.

\*     \*     \*     \*     \*     \*

CERTIFICATION OF REPORTER:

I certify that the foregoing is a correct transcript from the record of the proceedings in the above-entitled matter.