**Dennis KOHL, by his parents and guardians, Norbert KOHL and Jean Kohl, Plaintiff,**

v.

**WOODHAVEN LEARNING CENTER, a corporation, and Woodhaven School, Inc., a corporation, Defendants.**

No. 86–4234–CV–C–5.

United States District Court,
W.D. Missouri, C.D.

May 18, 1987.

See also 672 F.Supp. 1226.

Joel Ferber, Ann B. Lever, Legal Services of Eastern Missouri, Inc., St. Louis, Mo., for plaintiff.

Robert C. Smith, Smith, Lewis & Beckett, Columbia, Mo., for Woodhaven Learning Center.

Marvin E. Wright, Knight, Ford, Wright, Atwill, Parshall & Baker, Columbia, Mo., for Woodhaven School, Inc.

## ORDER

SCOTT O. WRIGHT, Chief Judge.

Before the Court are defendants' motion for summary judgment and defendants' motion for judgment on the pleadings. For the following reasons, the Court concludes that summary judgment or judgment on the pleadings would be improper.

### Factual Background

Plaintiff has instituted this action under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, against defendants Woodhaven Learning Center and Woodhaven School, Inc. Woodhaven Learning Center, a non-profit corporation, is a life-skills and living quarters facility which provides residential placement to handicapped individuals, and which is a recipient of federal financial assistance. Woodhaven School, Inc. is a non-profit rehabilitation facility which provides educational, prevocational

and vocational day programs for handicapped individuals. Woodhaven School, Inc. is also a recipient of federal financial assistance.

According to plaintiff's first amended complaint, plaintiff is a thirty-one-year-old man who is mentally retarded, bilaterally blind, exhibits behavior problems which include scratching and biting, and has been diagnosed as an active carrier of Hepatitis B. Beginning in October, 1983, his parents, and legal guardians, sought residential placement and training services for plaintiff at Woodhaven School and Woodhaven Learning Center. Plaintiff lived in and was evaluated at Woodhaven Learning Center and Woodhaven School from July 15, 1984 to October 26, 1984. According to plaintiff, although he was found to be appropriate for residential and day training programs at Woodhaven Learning Center and Woodhaven School, plaintiff was not accepted for permanent placement in either program because of his behavioral problems and/or his condition as an active carrier of Hepatitis B.

In July of 1985, Woodhaven Learning Center informed plaintiff's parents that he could be readmitted on or after August 5, 1985, when immunization of its residents against Hepatitis B has been completed. On December 4, 1985, Woodhaven Learning Center informed plaintiff's parents that plaintiff would not be readmitted because of his behavioral problems and/or his condition as an active carrier of Hepatitis B. After receiving test results which showed that plaintiff was "e" antigen positive, defendant Woodhaven School, on or about December, 1985, refused to readmit plaintiff because of his behavioral problems and/or his condition as an active Hepatitis B carrier.

## Discussion

In their joint motion for summary judgment, defendants argue that although plaintiff is admittedly handicapped by virtue of being mentally retarded and bilaterally blind, plaintiff is not a "handicapped individual" within the scope of Section 504 of the Rehabilitation Act as a result of his behavioral problems and diagnosis as an active carrier of Hepatitis B. Additionally, defendants argue that even if plaintiff's status as an active carrier of Hepatitis B constitutes a handicap within the meaning of Section 504 of the Rehabilitation Act, summary judgment is warranted since the record clearly shows that plaintiff was not denied admission "solely by reason of his handicap," but rather was denied admission because of his aggressive, maladaptive behavioral problems. The Court will address each of these issues separately.

*Is Plaintiff a "handicapped individual"?*

Preliminarily, it should be noted that the principles governing summary judgment pursuant to Rule 56, Fed.R.Civ.P., are well-established in the Eighth Circuit. A summary judgment should not be entered by the Court unless the pleadings, stipulations, affidavits and admissions show that there are no genuine issues as to any material fact. *See Vette Co. v. Aetna Casualty and Surety Co.*, 612 F.2d 1076 (8th Cir. 1980). Moreover, in reviewing a motion for summary judgment, the Court must view the facts in a light most favorable to the opposing party and must give that party the benefit of all reasonable inferences to be drawn from the facts. *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

Thus, it is clear that a motion for summary judgment should be granted only on rare occasions. As noted in *Foster v. Johns–Manville Sales Corp.*, 787 F.2d 390, 392 (8th Cir.1986): "This Court often has noted that summary judgment is 'an extreme and treacherous remedy,' and should not be entered 'unless the movant has established its right to a judgment with such clarity as to leave no room for controversy and unless the other party is not entitled to recover under any discernible circumstances.' "

In this case, defendants have moved for summary judgment, alleging that plaintiff has failed to make out a prima facie case under Section 504 of the Rehabilitation Act since neither contagious diseases nor behavioral problems are handicaps within the meaning of the Act.

Section 504 of the Rehabilitation Act reads in pertinent part:

"No *otherwise qualified handicapped individual* ... shall, *solely by reason of his handicap,* be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...." (emphasis added) 29 U.S.C. § 794.

In 1974 Congress expanded the definition of "handicapped individual" for use in § 504 to read as follows:

"[A]ny person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) *is regarded as having such an impairment.*" (emphasis added). 29 U.S.C. § 706(7)(B).

The term "physical or mental impairment," as defined by the regulations, is:

"(A) any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological; musculoskeletal; special sense organs; respiratory, including speech organs; cardiovascular; reproductive, digestive, genitourinary; hemic and lymphatic; skin; and endocrine; or (B) any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities."

45 C.F.R. § 84.3(j)(2)(i). Additionally, the regulations define "major life activities" as: "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 84.3(j)(2)(ii).

Thus, the first question before the Court is whether a person afflicted with Hepatitis B, a contagious disease, which does not result in physical impairment is a "handicapped individual" within the meaning of § 504.

In deciding this question, the Court is aided by the Supreme Court's recent decision in *School Board of Nassau County, Florida v. Arline,* — U.S. —, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987). In *Arline,*

plaintiff, an elementary school teacher, sued the School Board because of her discharge after suffering a third relapse of tuberculosis. The District Court dismissed plaintiff's case, concluding that plaintiff was not a "handicapped individual" within the meaning of § 504. *Id.* at —, 107 S.Ct. at 1124. The Court of Appeals reversed, holding that "persons with contagious diseases are within the coverage of section 504" and that the plaintiff's condition "falls ... neatly within the statutory and regulatory framework" of the Act. *Arline v. School Board of Nassau County, Florida,* 772 F.2d 759, 764 (11th Cir. 1985).

On appeal, the Supreme Court held that a person suffering from a contagious disease of tuberculosis can be a handicapped person within the meaning of § 504 of the Rehabilitation Act and that plaintiff was such a person. *Id.* at —, 107 S.Ct. at 1130. The Court based its holding on the fact that plaintiff had a physical impairment, as that term is defined by the Act, since her tuberculosis was a physiological disorder or condition affecting her respiratory system, which substantially limited one or more of her major life activities by requiring her to be hospitalized. *Id.* at —, 107 S.Ct. 1130. The Supreme Court declined to answer the question before this Court, to wit, whether a person who is simply a carrier of a contagious disease without having a physical impairment or suffering from any other symptoms associated with the disease can be deemed to be a "handicapped individual" within the meaning of the Act. *Id.* at —, n. 7, 107 S.Ct. at 1128, n. 7 ("This case does not present, and we therefore do not reach, the questions [of] whether a carrier of a contagious disease such as AIDS could be considered to have a physical impairment, or whether such a person could be considered, solely on the basis of contagiousness, a handicapped person as defined by the Act.").

However, in analyzing the legislative history of § 504 as it relates to the contagious effects of a physical impairment, the Court drew the following conclusion:

"Allowing discrimination based on the contagious effects of a physical impairment would be inconsistent with the basic purpose of § 504, which is to ensure that handicapped individuals are not denied jobs or other benefits because of the prejudicial attitudes or the ignorance of others. By amending the definition of 'handicapped individual' to include not only those who are actually physically impaired, but also those who are regarded as being impaired and who, as a result, are substantially limited in a major life activity, Congress acknowledged that society's accumulated myths and fears about disability and disease are as handicapping as are the physical limitations that flow from actual impairment. Few aspects of a handicap give rise to the same level of public fear and misapprehension as contagiousness. Even those who suffer or have recovered from such noninfectious diseases as epilepsy or cancer have faced discrimination based on the irrational fear that they might be contagious. The Act is carefully structured to replace such reflexive reactions to actual or perceived handicaps with actions based on reasoned and medically sound judgments: the definition of 'handicapped individual' is broad, but only those individuals who are both handicapped *and* otherwise qualified are eligible for relief. The fact that *some* persons who have contagious diseases may pose a serious health threat to others under certain circumstances does not justify excluding from the coverage of the Act *all* persons with actual or perceived contagious diseases. Such exclusion would mean that those accused of being contagious would never have the opportunity to have their condition evaluated in light of medical evidence and a determination made as to whether they are 'otherwise qualified.' Rather, they would be vulnerable to discrimination on the basis of mythology—precisely the type of injury Congress sought to prevent." (emphasis in the original). *Id.* at ——, 107 S.Ct. at 1128.

Thus, it appears from this language that while the Supreme Court did not answer the question of whether possessing a contagious disease without any physical impairment makes one a "handicapped individual" within the meaning of the Act, the Court's analysis of the legislative history behind § 504 lends support to plaintiff's argument that a person with a contagious disease like Hepatitis B, while not physically impaired by it, can be deemed a "handicapped individual" as the term is used in § 504.

This conclusion is further supported by the regulations promulgated by the Department of Health and Human Services. Section 84.3(j)(2)(iv) provides that the phrase "Is regarded as having an impairment" as used in 29 U.S.C. § 706(7)(B)(iii) "means (A) has a physical or mental impairment that does not substantially limit major life activities but that is treated by a recipient as constituting such a limitation; (B) has a physical or mental impairment that substantially limits major life activities *only as a result of the attitudes of others towards such impairment;* or (C) has none of the impairments defined in paragraph (j)(2)(i) of this section but is treated by the recipient as having such an impairment." (emphasis added).

In this case, plaintiff, as a result of being a carrier of Hepatitis B, clearly falls within section 84.3(j)(2)(iv)'s definition of "Is regarded as having an impairment" since, as a result of being a carrier of Hepatitis B (a physical impairment), plaintiff has been denied access to Woodhaven Learning Center and Woodhaven School (limits major life activities) primarily as a result of the belief by those at the facilities that plaintiff's condition poses a threat to third persons within the facility (only as a result of the attitude of others toward such impairment).

■ Thus, the Court concludes that in this particular case, plaintiff, by reason of being diagnosed as an active carrier of a contagious disease like Hepatitis B, is a "handicapped individual" as that term is used in 29 U.S.C. § 706(7)(B) since plaintiff "is regarded as having such an impairment" as that phrase is defined by the Secretary of Health and Human Services in Regulation Section 84.3(j)(2)(iv). Having found plaintiff to be a "handicapped indi-

vidual" by reason of his condition of being an active carrier of Hepatitis B, the Court reserves answering the question of whether plaintiff can be deemed a "handicapped individual" by reason of his behavioral problems.

*Was plaintiff excluded from participation "solely by reason of his handicap?"*

Defendants next argue that the pleading, interrogatories, requests for production, and depositions, in addition to the affidavits attached to defendant's joint motion for summary judgment, clearly demonstrate that plaintiff was not denied admission to defendants' facilities and programs "solely by reason of his handicap," but, rather, that plaintiff was denied admission because of his behavioral problems.

In support of their contention, defendants' suggestions in support of their motion for summary judgment state that:

"Hepatitis B is indeed a severe, sometimes fatal, disease, the transmission of which is a concern of the medical profession and the defendants in this case. The affidavits of the physicians attached to defendants' joint motion for summary judgment reveal that the danger of transmitting Hepatitis B is greatly increased where an active carrier of Hepatitis B, e-antigen positive, exhibits aggressive behavioral problems, including biting, scratching, self-abusive behavior, and inappropriate sexual behavior such as the plaintiff in this case. Certainly of extreme concern is the transmission of Hepatitis B through open wounds created by biting, scratching, or other reasons.

"The decisions by both defendants that their respective programs would be inappropriate placement for plaintiff because of his status of being an active carrier of Hepatitis B, e-antigen positive, along with the previously described behavioral problems, were not made in a 'vacuum,' but were informed decisions based on information received concerning Hepatitis B from trained medical professionals, including Dr. Clarence M. Pickard, as shown by the affidavit of Dr. Pickard which is attached to defendants' joint motion for summary judgment, a review of the most up-to-date medical literature concerning the dangers of Hepatitis B, including the "Hepatitis B Informational Package" which had been prepared by Dr. Mohammad Akhter for the Missouri Department of Mental Health, and based on defendants' personal observation and evaluation of plaintiff. In addition, both defendants sought to obtain funding from the State of Missouri for the screening and innoculation for Hepatitis B of defendants' respective staff and employees, although such funding was subsequently denied by the State of Missouri." (Joint Suggestions of Defendants in Support of Defendants' Motion for Summary Judgment, pp. 5–6).

From these statements, a number of things become clear. First, nowhere in their suggestions do these defendants state that absent plaintiff's condition as an active carrier of Hepatitis B, plaintiff's behavioral problems would have precluded his admission to defendants' facilities and programs. Rather, defendants are arguing that since the risk of spreading the disease is heightened by plaintiff's aggressive behavior, then defendants' decision to deny plaintiff admission is based on his contagious condition, coupled with his aggressive behavior, and, thus, plaintiff was not denied admission "solely on the basis of his handicap." Second, it appears, by defendants' own suggestions, that their major concern is the risk of spreading Hepatitis B throughout the facilities and not merely with any problems associated with plaintiff's aggressive behavior.

■ Having gleaned these two key points from defendants' suggestions in support of their motion for summary judgment, it clearly appears to the Court that the question of whether plaintiff was denied admissions "solely by reason of his handicap" becomes one of fact in this case which could not be properly disposed of by way of a motion for summary judgment. Additionally, the questions of the heightened risk of spreading the disease because

of plaintiff's aggressive behavior and the inability of defendants to provide reasonable accommodations are, likewise, questions of fact which cannot, and should not, be answered until after a full-fledged trial on these issues.

This conclusion is supported by the Supreme Court's decision in *Arline,* wherein the Court concluded the case should be remanded to the District Court so that the Court could make the following two-step "otherwise-qualified" inquiry. First, the Supreme Court concluded that the District Court must make "[findings of] facts, based on reasonable medical judgments given the state of medical knowledge, about (a) the nature of the risk (how the disease is transmitted), (b) the duration of the risk (how long is the carrier infectious), (c) the severity of the risk (what is the potential harm to third parties), and (d) the probabilities the disease will be transmitted and will cause varying degrees of harm." — U.S. at ——, 107 S.Ct. at 1131. The Supreme Court noted that in making these findings, courts normally should defer to the reasonable medical judgments of public health officials. *Id.,* at ——, 107 S.Ct. at 1130.

Additionally, the Supreme Court noted that the next step in the "otherwise-qualified" inquiry "is for the Court to evaluate, in light of these medical findings, whether the employer could reasonably accommodate the employee under the established standards for that inquiry." *Id. See also Southeastern Community College v. Davis,* 442 U.S. 397, 412, 99 S.Ct. 2361, 2370, 60 L.Ed.2d 980 (1979) (Accommodation is not reasonable if it either imposes undue financial and administrative burdens on a grantee or requires a fundamental alteration in the nature of the program).

### Conclusion

Having concluded that there are genuine issues of material fact in dispute, then it is clear that the granting of summary judgment in favor of defendants would be improper. Additionally, granting defendants a judgment on the pleadings would, likewise, be improper.

Accordingly, it is hereby

ORDERED that defendants' motion for summary judgment is denied. It is further

ORDERED that defendants' motion for judgment on the pleadings is denied.