697 F.Supp. 1085 (1988)
Eule FORD, Plaintiff,
v.
Leatrice J. DOWD, et al., Defendants.
No. 87-822C(6).
United States District Court, E.D. Missouri, E.D.
October 27, 1988.
Richard A. Barry, III, Saint Louis, Mo., for plaintiff.
Frank Susman, Susman, Schermer, Rimmel & Parker, St. Louis, Mo., for defendant Wilson & Pagedale.

ORDER AND MEMORANDUM
GUNN, District Judge.
IT IS HEREBY ORDERED that defendants Alvin Wilson and City of Pagedale's motion for summary judgment be and the same is granted.
This case is currently before the Court on defendants Alvin J. Wilson ("Wilson") and City of Pagedale's ("Pagedale") motion for summary judgment.
Under Rule 56 of the Federal Rules of Civil Procedure, a movant is entitled to summary judgment if he can "show that there is no genuine issue as to any material fact and that [he] is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). See also Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). In passing on a motion for summary judgment, a court is required to view the facts and inferences that may be derived therefrom in the light most favorable to the non-moving party. Buller v. Buechler, 706 F.2d 844, 846 (8th Cir.1983); Vette Co. v. Aetna Casualty & Surety Co., 612 F.2d 1076, 1077 (8th Cir.1980). The burden of proof is on the moving party and a court should not grant a summary judgment motion unless it is convinced that there is no evidence to sustain a recovery under any circumstances. Foster v. Johns-Manville Sales Corp., 787 F.2d 390, 392 (8th Cir.1986). However, under Rule 56(e), a party opposing a motion for summary judgment may not rest upon the allegations of his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). See also 10A Wright, Miller & *1086 Kane, Federal Practice and Procedure: Civil 2d, § 2739 (1983).
The pertinent facts are as follows. Plaintiff Eule Ford ("Ford") was, as of January 27, 1987, a Pagedale police officer. Ford had held that position since 1980. From sometime in 1985 until Wilson's appointment to the position on November 13, 1986, Ford was acting police chief. From April 1986 until her death in April 1987, Leatrice J. Dowd served as mayor of Pagedale.
From the time of Dowd's taking office, she and Ford disagreed. In fact, Dowd threatened to terminate Ford on several occasions for his refusal to acquiesce to her rather questionable demands. On one occasion, for example, the mayor demanded that Ford supply her with a police department vehicle for her personal use. Ford refused to do so, as this was against police department regulations. The Board of Police Commissioners must approve the mayor's decision to fire a police officer. The Board consistently overruled Dowd's attempts to fire Ford.
This long history of ill will between the mayor and Ford culminated in January 1987. Ford had understood that, when he was appointed as acting chief, he had also beenor would bepromoted to lieutenant. He appears to have received a lieutenant's pay while he served as acting chief. At some point after Dowd assumed office, and Wilson assumed the position of acting chief, Ford's wages were reduced to those of a patrolman. Ford wrote to the police board, requesting a reason for his "demotion." In response, Dowd addressed a vituperative letter to Ford, indicating that he had not been demoted, as he had never been promoted to lieutenant. Ford requested a hearing before the Board, which was granted and held on January 26, 1987. At that hearing, the Board members indicated that they would hold their decision in abeyance during the time it would take Ford and his attorney to assemble more information in support of Ford's assertion that he had been promised the promotion to lieutenant when he assumed the position as acting chief. On the afternoon of January 26, 1987, after the board meeting, the mayor met with Wilson and told him that she wanted a urinalysis ordered for Ford. Dowd told Wilson only that she had heard rumors that Ford was involved with drugs. When Wilson asked Dowd for substantiating evidence, she stated that she had witnesses who would come forward, but gave no names. Wilson did deliver the mayor's instructions to Ford on January 27, 1987. Ford was informed that he could appeal this order, either before or after taking the test. Ford believed, however, that if he refused to take the test, he would be fired and that, in those circumstances, the Board may uphold the mayor's termination. Moreover, Ford felt he had nothing to hide, and, understandably, wanted to put an end to the rumors being circulated and to the mayor's accusations. He submitted to the test. The results were negative.
Ford has, since the urinalysis, applied for jobs with both the St. John Police Department and the Kirkwood Police Department. Although he passed all the initial stages of both application procedures, neither police department hired him.
Ford filed the instant action in May 1987, under 42 U.S.C. §§ 1983, 1985, and 1986. He does not challenge the constitutionality of the Pagedale police department's drug testing program. Rather, he challenges the program's application to him as unreasonable. Further, Ford alleges that, as a result of his having been drug-tested, his ability to change jobs has diminished because of the stigma attached to a police officer who has been tested, regardless of the test results.
Defendants advance three grounds for summary judgment in their favor. First, they allege that the urinalysis performed on Ford was reasonable; secondly, they allege that Ford voluntarily consented to the test; finally, they allege that Wilson is protected from liability by qualified immunity. Because the Court finds the first ground persuasive, the second two will not be addressed.
A number of federal circuits have recently upheld even random urinalysis in highly regulated occupations. Policeman's Benevolent Assoc. of New Jersey v. Township *1087 of Washington, 850 F.2d 133 (3rd Cir.1988) (random testing of police officers upheld); National Treasury Employees Union v. Von Raab, 816 F.2d 170 (5th Cir.1987), cert. granted, ___ U.S. ___, 108 S.Ct. 1072, 99 L.Ed.2d 232 (1988) (upholding drug testing of Customs Service employees because of analogy to highly regulated industry); McDonell v. Hunter, 809 F.2d 1302 (8th Cir.1987) (upholding random urinalysis of corrections officers); Rushton v. Nebraska Pub. Power Dist., 653 F.Supp. 1510 (D.Neb.1987) (upholding drug testing of nuclear power plant employees). Where the particular drug-testing procedure at issue requires reasonable suspicion, at least one circuit has indicated that in a highly regulated occupation such as a fire department, allegations of employee drug use constitute reasonable suspicion. Everett v. Napper, 833 F.2d 1507, 1511 (11th Cir.1987). With the above case law as guidance, the Court finds that the urinalysis ordered and performed on Ford was reasonable. Ford, as a police officer, is in a recognized, highly regulated occupation. Wilson and Dowd had heard rumors in which Ford, by name, was accused of being involved with drugs. Under this set of circumstances, the Court concludes that the requested urinalysis was reasonable.
Therefore, defendants' motion for summary judgment is hereby granted, in accordance with the foregoing reasons.