Steve LAWSE, Plaintiff–Appellant,

v.

The UNIVERSITY OF IOWA HOSPITALS and Robert J. Corry, M.D., Defendants–Appellees.

No. 87–935.

Court of Appeals of Iowa.

Nov. 29, 1988.

Jerald R. Gregg, Fort Madison, for plaintiff-appellant.

Thomas J. Miller, Atty. Gen. and Shirley A. Steffe, Asst. Atty. Gen., for defendant-appellee hospital.

William M. Tucker, of Phelan, Tucker, Boyle & Mullen, Iowa City, for defendant-appellee Corry.

Considered by OXBERGER, C.J., and SACKETT and HABHAB, JJ.

SACKETT, Judge.

This case deals with a claim for wrongful removal of a kidney made against defendants-appellees University of Iowa Hospitals and Robert J. Corry, M.D., by a living kidney donor, plaintiff-appellant Steve Lawse.

We must determine whether the trial court was correct in determining on summary judgment the claim of plaintiff was barred by the limitations of Iowa Code section 614.1(9) (1987).[1]

The factual situation that surrounds this controversy is tragic. On August 15, 1973, a healthy kidney was harvested from the body of plaintiff. Plaintiff was then twenty-three years old. Plaintiff's harvested kidney was transplanted into the body of his older brother Paul. The kidney given to Paul failed before one year and Paul received a cadaver transplant which was successful. Paul is now dead, having suffered a ruptured cerebral aneurysm. Plaintiff's remaining kidney subsequently failed. On January 23, 1984, plaintiff received at defendant hospital a kidney transplant from an unrelated cadaver donor.

On May 7, 1985, plaintiff filed an administrative claim with the State Appeals Board pursuant to Iowa Code section 25A.5 (1987). Plaintiff's claim was based on the wrongful surgical taking of his kidney and the ongoing treatment as a result of that action. On December 4, 1985, plaintiff filed "pro se" a pleading he captioned Application to the Court in which he claims i.e., a kidney was harvested from him and the action should have been prevented with competent psychological preparation. He contended defendants were negligent in not responding to his unwillingness to donate and their psychological manipulation has caused plaintiff to suffer. He also charged clips were left in his body.

Plaintiff's application meets the basic requirements for a petition at law. It has been treated as a petition throughout these proceedings. We treat it as a petition. We consider it as a whole. See Tallman v. Hanssen, 427 N.W.2d 868, 870 (Iowa 1988).

After the application was filed there was considerable discovery. Discovery procedures were complicated by plaintiff's pro se status. From discovery we learn plaintiff's purpose is not only to seek damages for his claimed wrong; he is also seeking to enjoin the transplant of human organs from living persons. He feels sharing his unfortunate experience may save others from a similar fate. The dismissal of the injunction is not argued on appeal.

The defendants filed a complex motion for summary judgment. The motion was sustained and plaintiff appeals. Although summary proceedings were directed to numerous issues, the critical issue for our review is whether the trial court was correct in determining on summary judgment plaintiff's claim for the wrongful removal of his kidney was barred by the statute of limitations. We find it was and affirm the trial court.

We are concerned with the application of Iowa Code section 614.1(9) (1987), the statute of limitations on claims against doctors, nurses and hospitals. The statute provides in applicable part:

**Malpractice.** Those founded on injuries to the person or wrongful death against any physician and surgeon, osteopath, osteopathic physician and surgeon, dentist, podiatrist, optometrist, pharmacist, chiropractor, or nurse, licensed under chapter 147, or a hospital licensed under chapter 135B, arising out of patient care, *within two years after the date on which the claimant knew, or through the use of reasonable diligence should have known,* or received notice in writing of the existence of, the injury or death for which damages are sought in the action, whichever of the dates occurs first, *but in no event shall any action be brought more than six years after the date on which occurred the act or omission or occurrence alleged in the action to have been the cause of the injury or death* unless a foreign object unintentionally left in the body caused the injury or death. (emphasis supplied).

We find no precedent on the issue of the application of this statute to a claim for wrongful removal of an organ made by a living organ donor. Removing a healthy kidney from the body of one living being to transplant in the body of another is a relatively new medical procedure. The first

---

1. The parties have considered the case under the provisions of the 1987 Code.

successful kidney transplant was not performed until December 23, 1954, in Boston's Peter Bent Brigham Hospital between living identical twins. Bennett and Harrison, *Experience with Living Familial Renal Donors* 139 Surgery, Gynecology, & Obstetrics (1974). Defendant's answers to interrogatories related as of December 10, 1986, University Of Iowa Hospitals had removed 186 kidneys and transplanted 185. Unlike most claims against hospitals and doctors, this is not a claim for improper diagnosis or treatment of an illness or injury. Plaintiff's claim is based on a surgical operation not for the benefit of the plaintiff, the person operated on, but for another. *See Bonner v. Moran,* 126 F.2d 121, 123 (D.C.Cir.1941).

As defendants admit in answers to interrogatories, there was no benefit to plaintiff from the removal of his kidney. While there are no known benefits to plaintiff, there are known risks. Risk to a transplant donor are primarily two-fold. The first risk is the operation itself. *The Buying and Selling of Human Organs from the Living: Why Not?,* 13 Akron L.Rev. 152, 159 (1979).

There are differing opinions concerning the effect of the removal. One study has placed the risk at .07 percent. G. Schreiner, *Problems of Ethics in Relation to Haemodialysis and Transplantation, in Law and Ethics of Transplantation,* 6 at 20 (G. Walstenholme and M. O'Connor ed. 1966). Another study indicates in twenty years of renal transplantation there has never been a reported case of total renal failure in a donor. Baron, Botsford & Cole, *Live Organ and Tissue Transplants From Minor Donors in Massachusetts,* 55 BUL Rev. 159, 164 (1975). It has also been suggested, by some medical and legal writers, the risk has been minimized. One surgeon has noted the effect of removal on the survival of the kidney donor has apparently not been established. *Medical—Legal Problems of Organ Transplantation,* 21 Hast. L.J. 77, 84 (1969).

What plaintiff did was supply the medical industry with a kidney so they could transplant it in his brother's body. Plaintiff characterizes his claim as a medical malpractice claim. We accept his characterization.

Plaintiff contends and alleges he gave the kidney because he was assured by the doctor and the hospital: (1) Paul would die without his kidney when in fact his brother was doing well on dialysis, (2) there was basically no risk to him, it was like having an appendix removed; but he should stay away from horses due to the risks if he should injure his remaining kidney, and (3) he was the best match. He also contends: (1) he was not told his older brother had refused to donate his kidney, (2) other family members were told he was a match before he was, (3) he was given limited information, and (4) he was under duress.

Answers to interrogatories indicate at the time plaintiff gave the kidney none of the persons responsible for the psychological determination of a perspective living kidney donor at defendant hospital were licensed to practice psychology or had any members of the transplant staff obtained licenses or certifications in the field of psychology.

There is some concern over whether a donor who is related to the recipient can really give "informed consent" to the removal of his kidney. It is possible pressure from family members can be so great it is questionable whether the requisite "consent" is present. *The Buying and Selling of Human Organs from the Living, Why Not?* 13 Akron L.R. 152, 160 (1979). Subtle coercion is possible especially if a physician states without an individual's kidney, a close relative will die. 8 Journal Legal Medicine —— (1987). It has been suggested courts apply a higher standard of voluntariness for organ donation than for therapeutic medical procedures because of this potential for duress. *Id.* The problem of consent is not a static issue but demands consideration of and adaptation to changes in medical science and social standards. *See Consent to Medical and Surgical Treatment,* 14 Drake L.R. 101, 115 (1965).

The trial court determined plaintiff's claim was barred two years from the date of the surgery. While some of plain-

tiff's claims may have been barred in two years, we do not hold as a matter of law his claim that he was not adequately advised of the risks and did not give informed consent were barred two years from the date of surgery. Adequate disclosure and informed consent are two sides of the same coin. Plante, *An Analysis of "Informed Consent,"* 36 Ford L.Rev. 639 (1968). The problem of obtaining a knowing, educated, and truly voluntary and uncoerced consent by a living organ donor is a real medical and legal problem. Kusanovich, *Medical Malpractice Liability and the Organ Transplant,* 5 U.S.F.L.Rev. 223, 228 (1971).

Plaintiff knew immediately after the surgery one kidney had been removed. What he did not know was he would have a need for the harvested kidney. His need for the kidney that was removed was not known to him until he suffered renal failure and needed the previously donated kidney to survive.

Knowledge of an injury may or may not be sufficient to alert a reasonably diligent person to the basis of his or her claim. *Baines v. Blenderman,* 223 N.W.2d 199, 201 (Iowa 1974). The statute does not begin to run until the injured person knew, or through the exercise of reasonable diligence should have known of the facts giving rise to the claim. *Id.* Injury means discovery of one's cause of action for negligence. *Baines,* 223 N.W.2d at 201–03; *Vacura v. Plott,* 666 F.2d 1200, 1204 (8th Cir.1981). Plaintiff contends consent would not have been given had he known he would need the harvested kidney. He knew in August 1972 he had only one kidney. There are facts defendants had advised him one kidney was all he needed. Under plaintiff's version of the events he had no reason to know the advice was not correct. He had a right to rely on it. *Baines,* 223 N.W.2d at 202. Therefore, until his remaining kidney failed he did not know the advice was not correct.

There is sufficient evidence in the record to generate a question about whether there was an adequate disclosure and plaintiff gave an informed consent to the removal of the kidney. We determine there is a factual question that could be resolved in favor of finding plaintiff did not discover or know of defendants' alleged negligence or plaintiff should not in the exercise of reasonable diligence discovered defendants' alleged negligence until, his remaining kidney failed.

Plaintiff's claim, however, is barred under the six-year limitation in the statute. The removal of the kidney and the giving of the consent were the act, omission or occurrence giving rise to the claim. The statute is clear claims are barred six years from this time. Plaintiff's action was not filed within six years of that event. We need not determine if a claim such as plaintiff's was envisioned when the legislation was passed. The claim is clearly barred by the statute. If a public policy argument justifies a change it is a change for the legislature, not the courts.

AFFIRMED.

OXBERGER, C.J., concurs in result only.