**AETNA CASUALTY & SURETY COMPANY, Appellant,**

v.

**Frank FERNANDEZ, Appellee.**

**No. 86–2556–EM.**

United States Court of Appeals, Eighth Circuit.

Submitted June 9, 1987.

Decided Oct. 9, 1987.

Daniel E. Wilke, Clayton, Mo., for appellant.

John F. Triggs, for appellee.

Before ARNOLD and MAGILL, Circuit Judges, and DUMBAULD,[*] Senior District Judge.

DUMBAULD, Senior District Judge.

The question for decision in this case is whether the District Court[1] was correct in holding that appellant's claim was barred by the Missouri[2] statute of limitations and that this defense was so clearly meritorious that appellant is subject to sanctions under Rule 11 FRCP[3] for filing suit after being notified by defendant-appellee's counsel of the existence of the defense. We affirm.

More specifically, the issue is whether the statutory five year period may be tolled by virtue of appellant's contention that it did not discover defendant's wrongdoing until a later date.[4]

The Missouri law on this point is clear. A good statement of the requirements for tolling the statute is found in the following extract from the case of *Burr v. National Life & Accident Ins. Co.*, 667 S.W.2d 5, 7 (Mo.App.1984):

---

[*] The Honorable Edward Dumbauld, U.S. Senior District Judge of the Western District of Pennsylvania, sitting by designation.

1. The Honorable George F. Gunn, District Judge for the Eastern District of Missouri.

2. The case is governed by Missouri law. *Erie R.R. Co., v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

3. In pertinent part Rule 11 provides:
   ... The signature of an attorney or party constitutes a certificate by him ... that to the best of his knowledge, information, and belief formed after reasonable inquiry *it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law,* and

that it is not interposed for any improper purpose, such as *to harass or to cause unnecessary delay or needless increase in the cost of litigation* ... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay the other party or parties *the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.* (Italics supplied)

4. This extension of time for "discovery" of injury frequently is involved in medical malpractice cases, where the effects of improper treatment may not manifest themselves until long afterwards.

A cause of action for fraud accrues at the time the defrauded party discovered or in the exercise of due diligence, should have discovered the fraud, *Siler v. Kessinger*, 149 S.W.2d 890, 893 (Mo.App. 1941), although by statute discovery must fall within ten years of the alleged fraud, Section 516.120(5).[5] The plaintiff maintains the duty to make inquiry to discover the facts surrounding fraud. Where the means of discovery exist, the plaintiff will be deemed to have known of the fraud so as to begin the running of the statute. *Briece v. Bosso*, 158 S.W.2d 463, 467 (Mo.App.1942). The party seeking to avoid the bar of the statute in an action for fraud must set forth in her pleadings "... facts which would toll the statute, showing due diligence on their part in attempting to discover the fraud; or that it was not within their power; or that the other parties had by artifice or trick concealed the facts; or that a fiduciary relation existed between them and the other parties." *Brink v. Kansas City*, 359 Mo. 311, 221 S.W.2d 490, 493 (1949). See also *Womack v. Callaway County*, 358 Mo. 850, 159 S.W.2d 630 (1942).

An earlier formulation of the well-settled rules regarding this topic is contained in *Briece v. Bosso*, 158 S.W.2d 463, 467 (St. Louis Ct. of Appeals, Missouri, 1942):

As a general rule a party seeking to avoid the bar of the statute of limitations on account of fraud must aver and show that he used due diligence to detect it, and if he had the means of discovery in his power, he will be held to have known it. A party cannot avail himself of this exception to the statute when the means of discovering the truth were within his power and were not used. Concealment by mere silence is not enough. There must be some trick or contrivance intended to exclude suspicion and prevent inquiry. There must be reasonable diligence; and the means of knowledge are the same thing in effect as knowledge itself. This rule, however, is subject to qualification where a relation of trust and confidence exists between the parties. When a plaintiff is lulled into a sense of security by reason of such relationship rendering it the duty of the defendant to disclose the truth he is under no duty to make inquiry, and the statute does not begin to run until actual discovery of the fraud. If there was nothing in the transaction at the time, and nothing occurred later, to cause a reasonably prudent person to suspect fraud, he is not guilty of negligence in failing to ferret it out.

Several propositions are thus clearly established under Missouri law:

(1) The statute begins to run, even in the absence of actual discovery, at the time when, *in the exercise of due diligence,* the defrauded party *should have discovered* the fraud.

(2) *Plaintiff must diligently make reasonable inquiry.*

(3) *Means of discovery are deemed the equivalent of actual knowledge.*

(4) The party seeking to avoid the bar of the statute *must plead "facts ... showing due diligence."*[6]

---

**5.** Section 516 of Missouri Revised Statutes (1978) establishes a five year limitation for the actions therein enumerated:

Within five years:

(1) All actions upon contracts, obligations or liabilities, express or implied, except those mentioned in section 516.110, and except upon judgments or decrees of a court of record, and except where a different time is herein limited;

(2) An action upon a liability created by a statute other than a penalty or forfeiture;

(3) An action for trespass on real estate;

(4) An action for taking, detaining or injuring any goods or chattels, including actions for the recovery of specific personal property, or for any other injury to the person or rights of another, not arising on contract and not herein otherwise enumerated;

(5) An action for relief on the ground of fraud, the cause of action in such case to be deemed not to have accrued until the discovery by the aggrieved party, at any time within ten years, of the facts constituting the fraud.

**6.** *Kueneke v. Jeggle*, 658 S.W.2d 516, 518 (Mo. App.1983) ["When discovery is relied upon to toll the statute, the pleading should aver when it was made, and why it was not made sooner.... Appellant is deemed cognizant of or conversant with facts that should have been known and is

(5) Likewise, facts showing affirmative concealment by artifice or trick [7] must be pleaded in order to toll the statute. Concealment by mere silence is not enough. (6) Where a fiduciary relation of trust and confidence exists, the statute does not run until actual discovery of the fraud.[8]

The law being clear, the real dispute between the parties in the case at bar is one relating to the proper evaluation of the facts in the light of the foregoing legal precepts. We shall now review the pertinent facts.

■ Appellant's insured (and assignor [9]) Emerson Electric Company, of St. Louis, suspected collusion between its employees and suppliers resulting in payment of inflated, non-competitive and artificially excessive prices for goods purchased by Emerson.[10] Hence on September 7, 1978, Emerson retained a law firm to conduct an independent investigation. A preliminary report of October 3, 1978, identified Terence Gibbs, Emerson's Manager of Pur-

chasing, as a primary suspect, and appellee Frank Fernandez, and his company Components Plus, Inc., as secondary suspects.[11]

■ Aetna's excuse for not having proceeded at an earlier date to seek relief against Fernandez seems to attach undue importance to erecting a "middle wall of partition" [12] between the "arrangement" to extort excessive prices from Emerson during 1976, for participation in which Fernandez was under suspicion, and the "major conspiracy to defraud" from 1976 to 1978.[13]

There might be some point in distinguishing carefully between separate conspiracies in a criminal prosecution where a particular defendant might not be involved in the particular scheme for which he was being prosecuted [*Berger v. U.S.*, 295 U.S. 78, 80–81, 82–83, 55 S.Ct. 629, 630, 630–31, 79 L.Ed. 1314 (1935)] although implicated in other wrongdoing.[14] So too the distinction might become important in a prosecution for engaging in a "continuing criminal enterprise" under 21 U.S.C. § 848, if the de-

---

held to have known facts that he could, by exercise of ordinary care commensurate with the circumstances, discover by due diligence or other means within his power ... In any event appellants' pleadings are fatally defective in failing to plead the date of discovery or due diligence."]; *St. Louis Home Insulators v. Burroughs Corp.*, 793 F.2d 954, 955 (8th Cir.1986); *Alexander v. Perkin Elmer Corp.*, 729 F.2d 576, 577–78 (8th Cir.1984).

7. Mere silence does not suffice. "There must be some trick or contrivance intended to exclude suspicion and prevent inquiry." *Briece v. Bosso, supra*, 158 S.W.2d at 467.

8. This last-named ground for extension of time is not relevant in the case at bar.

9. The assignment to Aetna, and release covering loss caused by Gibbs and other Emerson employees, was dated May 6, 1980. It covered "loss arising out of *all* actions and omissions of: Terry Desmond Gibbs, Noel Edmund Hutchins, John C. Serra and Edward Escobedo." [Italics supplied.]

10. The scheme is described by the District Court as "bid-rigging and payment of kickbacks" to Emerson employees by suppliers of components. The complaint alleged fraud, unjust enrichment, and violations of the Racketeer Influenced Organizations Act (RICO) 18 U.S.C. § 1961 *et seq.* as added by section 901(a) of the Act of October 15, 1970, 84 Stat. 941. Like a

fraud action, a RICO claim is governed by the five-year Missouri statute. *Alexander v. Perkin Elmer Corp.*, 729 F.2d 576, 577 (8th Cir.1984). So is the unjust enrichment claim, since Section 510(1) expressly covers "implied" obligations.

11. The October 3, 1978, report also mentioned Vincent Villano as a secondary suspect connected with Components Plus. Apparently his activities (in California) were insufficiently substantial to warrant his being named as an additional defendant in the St. Louis based schemes. A later report of January 2, 1979, described a "major conspiracy to defraud" during a period of two years prior to October 23, 1978, with Gibbs as a prime culprit. Fernandez and his company were said to be participants in an "arrangement" with Gibbs from prior to July 9, 1976, up to the formulation of the "major conspiracy". Emerson's proof of loss submitted to Aetna on June 28, 1979, claims a loss on purchases from Fernandez's company (Components Plus) amounting to $577,734.57.

12. Ephesians 2:14.

13. See note 11, *supra*.

14. It is a basic constitutional principle that a defendant may be convicted only of the specific crime for which he is indicted. *Stirone v. U.S.*, 361 U.S. 212, 217, 80 S.Ct. 270, 273, 4 L.Ed.2d 252 (1960).

fendant took part only in a fresh conspiracy rather than a long-standing enterprise of organized institutionalized crime.

But in the case at bar the distinction is of little if any significance. Appellant insurance company as assignee of its insured (Emerson Electric Company) would be entitled to sue Fernandez for loss suffered as a result of any tortious wrongdoing or unlawful scheme, whether y-clept a "major conspiracy" or merely a less massive minor "arrangement".

It must be remembered emphatically that the assignment from Emerson to Aetna covered all loss caused by collusion of the Emerson employees named in the fidelity insurance policy,[15] whether denominated a "major" conspiracy or merely a simple "arrangement".

Under the Missouri law as previously outlined it seems clear that Aetna and Emerson did not use reasonable diligence in developing the facts after it knew Fernandez to be a suspect in the collusive pricing by which Emerson had been victimized.

Aetna's second excuse is that it had no means of investigating Fernandez until Gibbs had been sentenced, for Gibbs would have "taken the Fifth" if his testimony had been timely sought. Would Fernandez also have remained silent if his deposition had been sought? Surely some sort of investigative effort, even review of available documentary evidence in Emerson's records, would be required in order to demonstrate due diligence after the identity of a suspect had been learned. Aetna demonstrated no diligence whatever.

We hold that the action against Fernandez is time-barred.

Was the defense afforded by the statute of limitations so clear-cut and obvious that it was abuse of process for Aetna to go ahead and file suit after being advised of the availability of that defense by counsel for Fernandez?

We are mindful of what Justice Brandeis said in *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 51–52, 58 S.Ct. 459, 464, 82 L.Ed. 638 (1938): "Lawsuits ... often prove to have been groundless; but no way has been discovered of relieving a defendant from the necessity of a trial to establish the fact." [16]

We are also mindful that excessive "sanctionitis" under Rule 11 (as Judge Becker of the Third Circuit calls it) might discourage or "chill" vigorous and ingenious advocacy, especially in matters of controversial character where there is a reasonable likelihood of achieving potential change in the law.

■ Likewise we recognize that a good defense tolling the statute of limitations is possible if a solid case is made showing affirmative concealment. But no facts supporting such a defense were pleaded in the case at bar. Mere silence, it will be remembered, does not constitute active concealment or deceptive conduct under the Missouri authorities.

■ So on the whole we are satisfied that defendant's warning should have discouraged the insurance company from instituting unmeritorious litigation, and Rule 11 sanction was appropriate.

■ However, it seems that if the law is so clear that plaintiff's case was so weak, it should not have required much research and effort on the part of defense counsel to defend successfully. Perhaps the preparation of a simple "boiler plate" motion, supported by a short brief (and short oral argument if necessary) was all that was required for victory, and all that plaintiff should reasonably be compelled to pay for.[17] The District Court's findings

15. See note 9, *supra*.

16. This painful truth often causes much churning of the wheels of justice in cases involving habeas corpus and similar prisoners' petitions often utterly destitute of merit. Likewise the grant of motions for summary judgment, though touted by the appellate courts as a means of avoiding lengthy hearings, in practice

usually results in reversal and remand for evidentiary hearings if there is any theoretical possibility of adducing some evidence in support of the customary standard conclusory "boiler plate" allegations.

17. An agreed-upon fee between a successful party and counsel might well be proper in the light of the results obtained, but yet not reasonable

are somewhat unilluminating as to the basis for the *quantum* of the fee awarded.[18]

We therefore affirm the District Court on both issues which it decided, except that we remand for further elucidation with respect to the amount of fees to be awarded.

AFFIRMED and REMANDED for further findings as to amount of fees.

when involuntarily shifted to the opposing party. If defense counsel's research was already sufficient to demonstrate that it was unreasonable for plaintiff to file the complaint, no extensive *additional* research would seem to be justified as "reasonable expenses incurred because of the filing of the ... motion" for summary judgement. [see note 3, *supra*].

18. Apparently the Court approved the hourly rate, but did not determine with precision how many hours were reasonably necessary to vindicate the statute of limitations defense.